UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EUGENE JONES,

                          Plaintiff,

        v.

C.O. T. LINDBLAD, SGT. J. SMITH, C.O. G.
MARTIN, C.O. D. STAIGHT, C.O. THATHER,
C.O. STOWELL, C.O. JOHN DOE # 2, NURSE
FULLER, JAMES ESGROW, RN C. NARGREN,
SGT. GRAY, C.O. JOHN DOE # 5, C.O. JOHN
DOE # 6, R.N. COLLONI, R.N. G. BENNET,
NURSE PRACTITIONER HERMAN FOWLER,
C.O. JOHN DOE # 9, NURSE PRACTITIONER
S. MILLER, and DR. KANG LEE,

                          Defendants.

_____

**REPORT
and
RECOMMENDATION**

**05-CV-814S(F)**

APPEARANCES:         EUGENE JONES, *Pro Se*
                             95-B-1881
                             Great Meadows Correctional Facility
                             Box 51
                             Comstock, New York 12821-0051

                             ANDREW M. CUOMO
                             Attorney General, State of New York
                             Attorney for Defendants
                             MICHAEL A. SIRAGUSA
                             Assistant Attorney General, of Counsel
                             Main Place Tower,  Suite 300A
                             350 Main Street
                             Buffalo, New York 14202

## JURISDICTION

This case was referred to the undersigned by Honorable William M. Skretny on

May 8, 2008, for all pretrial matters including report and recommendation on dispositive

motions.  The matter is presently before the court on Defendants' motion for partial

summary judgment (Doc. No. 36), filed May 30, 2008.

## BACKGROUND

Plaintiff Eugene Jones ("Plaintiff" or "Jones"), proceeding *pro se*, commenced this civil rights action pursuant to 42 U.S.C. § 1983, on November 17, 2005, alleging that Defendants, various employees of the New York State Department of Corrections ("DOCS"), violated his constitutional rights under the First and Eighth Amendments. On April 13, 2007, Plaintiff filed an Amended Complaint (Doc. No. 22) ("Amended Complaint"), asserting essentially the same claims as in the original Complaint, but substituting several John Doe Defendants with named Defendants.  In particular, Plaintiff alleges that on November 29, 2002, while incarcerated, several Defendant DOCS employees subjected Plaintiff to excessive force through an unprovoked attack ("the altercation"), that was witnessed by other Defendant DOCS employees who failed to intervene on Plaintiff's behalf, all in violation of the Eighth Amendment.  Plaintiff also claims that following the altercation, other Defendants denied Plaintiff adequate medical care for injuries sustained in the attack, in violation of the Eighth Amendment, and that Defendant Hearing Officer James Esgrow, in violation of the Fourteenth Amendment, denied Plaintiff due process during the Tier III disciplinary hearing held in connection with a misbehavior report filed against Plaintiff following the altercation.  Defendants' Answer to the Amended Complaint (Doc. No. 23) ("Answer"), was filed on April 30, 2007.  A Scheduling Order filed September 26, 2007 (Doc. No. 28), established November 30, 2007 as the deadline for completing discovery.

On May 30, 2008, Defendants filed the instant motion for partial summary

judgment (Doc. No. 36) ("Defendants' motion"), along with supporting papers including a Statement of Facts (Doc. No. 37) ("Defendants' Statement of Facts"), a Memorandum of Law (Doc. No. 38) ("Defendants' Memorandum"), and the Declarations of Defendants Floyd Fuller (Doc. No. 39) ("Fuller Declaration"), Georgette Bennett (Doc. No. 40) ("Bennett Declaration"), Dr. Kang Lee (Doc. No. 41) ("Dr. Lee Declaration"), and James Esgrow (Doc. No. 42) ("Esgrow Declaration").  By order filed June 9, 2008 (Doc. No. 43), Plaintiff was given until July 31, 2008 to file a response opposing Defendants' motion and, by order filed August 18, 2008, that deadline was extended to September 30, 2008.  To date, Plaintiff has not filed anything in opposition to Defendants' motion. Oral argument was deemed unnecessary.

Based on the following, Defendants' motion should be GRANTED.


## FACTS

On November 29, 2002, Plaintiff Eugene Jones, then incarcerated at Elmira Correctional Facility ("Elmira" or "the Correctional Facility"), was involved in an incident with Defendant Corrections Officers T. Lindblad, G. Martin, D. Staight, and Sgt. J. Smith, which was witnessed by Defendant Corrections Officers Thatcher, Stowell and John Doe # 2, who failed to intervene on Plaintiff's behalf.  As a result of the incident, Plaintiff sustained a swollen knot behind his left ear, a swollen knot with a cut at the top of the back of his head, a cut inside his mouth on the lower right side, a swollen left knee, swollen right ankle, large left shoulder bruise.  Since the incident, Plaintiff has been treated for his injuries by Defendant Registered Nurses C. Nargren, Colloni, G. Bennet, Fuller, Nurse Practitioners Herman Fowler, S. Miller, Dr. Kang Mang Lee, Sgt.

Gray, Corrections Officers John Doe # 5 and John Doe # 6.  Plaintiff, however, maintains that he never received adequate treatment for his injuries and has since experience severe back pain with numbness, radiating down his legs, and swelling, pain and numbness in his wrist as a result of the incident.

Following the incident, a Use of Force Report ("UFR")[1] was completed, and Plaintiff was admitted to the Special Housing Unit ("SHU") of the Correctional Facility, and was charged in a misbehavior report ("the misbehavior report")[2] with violating DOCS Rules 106.10 (refusing a direct order), 100.11 (assault on DOCS staff) and 104.11 (creating a disturbance).  On December 5, 2002, Deputy Superintendent of Administration W. J. Hopkins commenced a Tier III disciplinary hearing regarding the misbehavior report, which concluded on December 12, 2002, when Plaintiff was found guilty of creating a disturbance and assault on staff, but not of refusing a direct order. As a result of the guilty disposition, Plaintiff was admitted for 24 months to SHU, with concurrent loss of commissary, package and phone privileges and good time credit.

Former Inmate Discipline and Special Housing Director Donald Selsky ("Selsky") reversed Plaintiff's guilty disposition and, on February 26, 2003, Defendant Commissioner's Hearing Officer James Esgrow ("Esgrow"), commenced a rehearing ("the rehearing") on the misbehavior report.[3]  In connection with the rehearing, Plaintiff requested two unnamed inmates testify at the rehearing, identifying such witnesses only

---

[1] A copy of the UFR is attached as Exhibit A to the Fuller Declaration.  References to "UFR at __" are to the specific page number of the UFR.

[2] A copy of the misbehavior report is attached as Exhibit A to the Dr. Lee Declaration.

[3] A copy of the rehearing transcript is attached as Exhibit H to the Esgrow Declaration. References to "T. at __", are to pages of the rehearing transcript.

as the inmates previously located in Cell I-1-17 and I-1-2.  A search of Elmira's Block
Log Books undertaken by Plaintiff's Tier III hearing assistant J. Bradshaw
("Bradshaw"),[4]  indicated that on the date of the incident, the inmates housed in the
specified cells were inmates Gilbert ("Gilbert") and Robinson ("Robinson"), but that
Gilbert and Robinson had been released from DOCS custody prior to the rehearing.
Accordingly, neither Gilbert nor Robinson testified at the rehearing.  Plaintiff also
requested in connection with the rehearing copies of all statements and investigative
reports written and submitted by one "Lieutenant W"[5] in connection with the incident,
and that Esgrow listen to the audiotape of the initial hearing on the charges.  Esgrow
provided Plaintiff with only some of the requested statements and investigative reports,
and did not review the audiotape as Plaintiff requested.

On March 12, 2003, the rehearing concluded and Plaintiff was found guilty of all
charges, including creating a disturbance, assault on staff, and refusing a direct order.
As a result of the second guilty disposition, Plaintiff was admitted for 36 months to SHU,
with concurrent loss of commissary, packages and phone privileges, and 24 months
loss of good time credit. Plaintiff appealed Esgrow's ruling and, on June 12, 2003,
Selsky modified the sentence by dismissing the refusal to obey a direct order charge,
and shortening Plaintiff's time in SHU with loss of privileges from 36 to 24 months.

On November 21, 2003, Plaintiff was transferred to Clinton Correctional Facility
("Clinton"), where Plaintiff received medical treatment from Nurse Practitioner Miller,

---

[4] Pursuant to DOCS Directive No. 4932 Subpt. 251-4, an inmate shall be provided with assistance
in preparing for a Tier III disciplinary hearing.

[5] "Lieutenant W" is not further identified in the record.

and Dr. Lee.

On January 21, 2004, Selsky administratively reversed the rehearing and
expunged the rehearing disposition on the basis that Esgrow did not sufficiently make a
record of Esgrow's efforts to locate Plaintiff's requested witnesses who had been
released from DOCS custody prior to the rehearing.  Plaintiff spent a total of 418 days in
SHU with loss of privileges prior to the expunction of the disciplinary charges from his
record.

This action followed.


## DISCUSSION

**1.     Summary Judgment**

Summary judgment of a claim or defense will be granted when a moving party
demonstrates that there are no genuine issues as to any material fact and that a moving
party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex
Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).  The party
moving for summary judgment bears the burden of establishing the nonexistence of any
genuine issue of material fact and if there is any evidence in the record based upon any
source from which a reasonable inference in the non-moving party's favor may be
drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322.

Once a party moving for summary judgment has made a properly supported
showing as to the absence of any genuine issue as to all material facts, the nonmoving
party must, to defeat summary judgment, come forward with evidence that would be

sufficient to support a jury verdict in its favor and "may not simply rely on conclusory

statements or on contentions that the affidavits supporting the motion are not credible."

*Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995)

(citing cases).  Rather, Fed. R. Civ. P. 56(e) requires that

> When a motion for summary judgment is made and supported as provided in this
> rule, an adverse party may not rest upon the mere allegations or denials of the
> adverse party's pleading, but the adverse party's response, by affidavits or as
> otherwise provided in this rule, must set forth specific facts showing that there is
> a genuine issue for trial.  If the adverse party does not so respond, summary
> judgment, if appropriate, shall be entered against the adverse party.

Furthermore, "factual issues created solely by an affidavit crafted to oppose a summary

judgment motion are not 'genuine' issues for trial."  *Hayes v. N.Y. City Dep't of Corr.*, 84

F.3d 614, 619 (2d Cir.1996).

Although Plaintiff failed to file anything in opposition to summary judgment, the

court may not grant Defendants' motion without first examining Defendants'

submissions to determine whether Defendants have met their burden of demonstrating

the absence of any material issue of fact for trial.  *D.H. Blair & Co., Inc. v. Gottdiener*,

462 F.3d 95, 109 (2d Cir. 2006) (citing *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*,

373 F.3d 241, 246 (2d Cir. 2004)).  If Defendants' evidence submitted in support of

summary judgment failed to meet Defendants' burden of production, "'then summary

judgment must be denied even if no opposing evidentiary matter is presented.'"

*Gottdiener*, 462 F.3d at 109-10 (citing *Vt. Teddy Bear Co.*, 373 F.3d at 246)).

Defendants are alleged to have violated Plaintiff's civil rights under 42 U.S.C. §

1983, pursuant to which an individual may seek damages against any person who,

under color of state law, subjects such individual to the deprivation of any rights,

privileges, or immunities protected by the Constitution or laws of the United States.  42

U.S.C. § 1983.  Section 1983, however, "'is not itself a source of a substantive rights,'

but merely provides 'a method for vindication of federal rights elsewhere conferred.'"

*Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137,

144 n. 3 (1979)).  Thus, "[t]he first step in any such claim is to identify the specific

constitutional right allegedly infringed."  *Id.*  (citing *Graham v. Connor*, 490 U.S. 386,

394 (1989); and *Baker*, *supra*, at 140).

Here, Plaintiff claims that Defendants violated his Eighth Amendment right

against cruel and unusual punishment on November 29, 2002, by subjecting Plaintiff to

excessive force, Amended Complaint ¶¶ 13-28, and failing to intervene in the use of

such force, *id.* ¶ 29, and, later, by denying Plaintiff necessary medical treatment for

injuries sustained as a result of the November 29, 2002 incident. *Id*. ¶¶ 30-35, 51-111.

Plaintiff further maintains that Defendant Hearing Officer Esgrow Plaintiff due process in

violation of the Fourteenth Amendment in connection with Plaintiff's Tier III disciplinary

hearing by failing to call certain witnesses to testify on Plaintiff's behalf, Amended

Complaint ¶¶ 44-46, denying Plaintiff relevant documentary evidence for use at the

hearing, *id.* ¶¶ 40-41, and by refusing Plaintiff's request that Esgrow listen to an

audiotape of a prior disciplinary hearing involving Plaintiff. *Id*. ¶¶ 42-43.  In the instant

case, Defendants seek summary judgment on Plaintiff's Eighth Amendment inadequate

medical care claim, Defendants' Memorandum at 3-12, and due process claims. *Id*. at

12-23.  Defendants alternatively argue that Defendants are qualifiedly immune from

liability on these claims. *Id*. at 23-24.

Preliminarily, the court observes that despite Plaintiff's *pro se* status, the court

did not provide any notice to Plaintiff pursuant to Local Rule of Civil Procedures 56.2 and *Irby v. New York City Transit Authority*, 262 F.3d 412, 413 (2d Cir. 2001) (Doc. No. 58) ("IRBY notice"), advising Plaintiff of the consequences of failing to file any response in opposition to summary judgment, including that the claims on which Defendants had moved could be decided by the court, against Plaintiff, without a trial and based only on written materials submitted in support of Defendant's motion.  "'The failure of a district court to apprise pro se litigants of the consequences of failing to respond to a motion for summary judgment is ordinarily grounds for reversal.'"  *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620 (2d Cir. 1999) (quoting *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994)). Nevertheless, a district court is not required to explain the nature of summary judgment to a *pro se* litigant (1) where the pro se litigant's adversary 'has already provided the litigant with requisite notice, or (2) where the record otherwise makes clear that the litigant understood the nature and consequences of summary judgment."  *Vital*, 168 F.3d at 621 (internal citations omitted).  Significantly, here, Defendants' motion contained a "Notice to Pro Se Litigants Opposing Summary Judgment," advising that if Plaintiff fails to respond to Defendants' motion "with affidavits or other documentary evidence contradicting the facts asserted by defendants, the Court may accept defendants' factual assertions as true.  Judgment may then be entered in defendants' favor without a trial."  Defendants' motion at 2.  Accordingly, the court was not required to provide any additional IRBY notice.


### A.    Failure to Provide Adequate Medical Care

The Eighth Amendment prohibits "cruel and unusual punishments" during

imprisonment.  U.S. Const. 8th amend.; *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991);

*Romano v. Howarth*, 998 F.2d 101, 104 (2d Cir. 1993).  Not every governmental action

affecting the interests or well-being of a prisoner, however, is subject to Eighth

Amendment protections.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Rather, only the

unnecessary and wanton infliction of pain constitutes the cruel and unusual punishment

forbidden by the Eighth Amendment.  *Id*.  Nevertheless, within the ambit of the Eighth

Amendment are protections against deliberate indifference to an inmate's serious

medical needs.  *Trammell v. Keane*, 338 F.3d 155, 162 (2d Cir. 2003) (observing

different tests for evaluating Eighth Amendment claims for excessive force, conditions of

confinement, and denial of medical care).

Defendants seek summary judgment insofar as Plaintiff alleges Defendants were

deliberately indifferent to Plaintiff's serious medical needs following the November 29,

2002 incident, arguing that even if Plaintiff did sustain the injuries as alleged injuries,

such injuries were not sufficiently severe to sustain the objective component of an

Eighth Amendment deliberate indifference claim.  Defendants' Memorandum at 4-7.

Defendants further maintain that the absence of any prison records establishing Plaintiff

actually requested, but was denied, medical attention for his back injury also fails to

sustain the subjective component of such claim.  *Id*. at 9-12.

"In order to establish an Eighth Amendment claim arising out of inadequate

medical care, a prisoner must prove 'deliberate indifference to [his] serious medical

needs.'"  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v.

Gamble*, 429 U.S. 97, 104 (1976) (bracketed text in original)).  A serious medical

condition exists where "the failure to treat a prisoner's condition could result in further

significant injury or the unnecessary and wanton infliction of pain."  *Chance*, 143 F.3d at

702.  The standard for determining whether there has been an Eighth Amendment

violation based on deliberate indifference to a prisoner's serious medical needs

> incorporates both objective and subjective elements.  The objective
> 'medical need' element measures the severity of the alleged deprivation,
> while the subjective 'deliberate indifference' element ensures that the
> defendant prison officials acted with a sufficiently culpable state of mind.

*Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003) (citing *Estelle*, 429 U.S. at 104,
and *Hathaway v. Coughlin*, 99 F.3d 550. 553 (2d Cir. 1996)).

Denying or delaying access to medical care or intentionally interfering with

prescribed treatment may constitute deliberate indifference.  *Estelle*, 429 U.S. at 104;

*see Harrison v. Barkley*, 219 F.3d 132, 138 (2d Cir. 2000) (holding dentist's outright

refusal for one year to treat a cavity, a degenerative condition tending to cause acute

pain if left untreated, combined with imposition of an unreasonable condition on such

treatment, could constitute deliberate indifference on the part of the prison dentist,

precluding summary judgment in defendant's favor).  Such delay in treatment violates

the Eighth Amendment "whether the indifference is manifested by prison doctors in their

response to the prisoner's needs or by prison guards by intentionally denying or

delaying access to medical care or intentionally interfering with the treatment once

prescribed."  *Estelle*, 429 U.S. at 104-05.  Further, culpable intent requires the inmate

establish both that a prison official "has knowledge that an inmate faces a substantial

risk of serious harm and he disregards that risk by failing to take reasonable measures

to abate the harm."  *Hayes v. New York City Department of Corrections*, 84 F.3d 614,

620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994)).

Nevertheless, neither "inadvertent failures to provide adequate medical care" nor

"negligence in diagnosing or treating a medical condition" comprise Eighth Amendment

violations.  *Estelle*, 429 U.S. at 105-06 (holding medical malpractice does not become a

constitutional violation merely because the victim is a prisoner); *Harrison*, 219 F.3d at

139 ("We agree that the mere malpractice of medicine does not amount to an Eighth

Amendment violation.").  Nor does a "mere disagreement" with a physician over the

appropriate course of treatment arise to a constitutional violation, although in certain

instances a physician may evince deliberate indifference by consciously choosing "an

easier and less efficacious" treatment plan.  *Chance*, 143 F.3d at 703.

As to the objective prong, a sufficiently serious condition is "a condition of

urgency, one that may produce death, degeneration or extreme pain."  *Hathaway*, 99

F.3d at 66.  In the instant case, Plaintiff's Ambulatory Health Records ("AHR"),[6] is

devoid of any evidence establishing that Plaintiff, following the November 29, 2002

incident, was denied medical treatment for any injuries of a medical urgency that might

produce death, degeneration or extreme pain.  Rather, the UFR indicates the incident

occurred on November 29, 2002 at 8:10 A.M.  UFR at 1.  The AHR establishes that

following the incident, Plaintiff was initially examined at 9:30 A.M., by Fuller who noted

Plaintiff's injuries as a swollen, painful area behind Plaintiff's left ear, small cut and

swollen area on top of Plaintiff's head, a cut inside Plaintiff's right lower lip, swollen left

knee with full range of motion, slightly swollen right ankle with full range of motion, and

---

[6] Copies of portions of Plaintiff's AHR are attached as Exhibit A to the Dr. Lee Declaration, Exhibits C, D and E to the Fuller Declaration, and as Exhibit B and C to the Bennet Declaration. References to "AHR at __" are to the specific page of that portion of Plaintiff's AHR attached as Exhibit A to the Dr. Lee Declaration.  Because the pages of those portions of the AHR attached to the Fuller and Bennet Declarations are not separately numbered, references to those portions of the AHR are to the date of the specific entry referenced and the declaration to which such entry is attached.

a bruise of left shoulder without swelling and with full range of motion.  UFR at 2; Fuller

Declaration AHR, Nov. 29, 2002.

Following Fuller's initial assessment of Plaintiff's injuries, Plaintiff was examined

by at 11:30 A.M. by Nurse Practitioner Fowler who, upon examining Plaintiff, found

Plaintiff ambulated without difficulty, was alert and oriented in all three spheres,

appeared in no acute distress, but complained of a bump and cut on the top of his head,

there was a small superficial laceration and small contusion of the vertex of Plaintiff's

head, a "lump and pain" on the left side of Plaintiff's head from a palpable contusion of

the left mastoid area, Plaintiff's left ear was intact without bleeding, pain and lump on

Plaintiff's left knee, yet good range of motion without deforming and "okay" weight

bearing.  Fuller Declaration AHR, Nov. 29, 2002.  Fowler ordered X-rays of Plaintiff's

skull, mastoid and right ankle and Plaintiff was instructed to use apply cold compresses

for 24 hours and follow-up as needed. *Id*.  X-rays taken on December 3, 2002 of

Plaintiff's ankle and skull were reviewed by Dr. Canfield and found to be within normal

limits.  Fuller Declaration Exh. D.  Plaintiff has not disputed the accuracy nor the

authenticity of such evidence.

As such, the medical evidence pertaining to Plaintiff's injuries sustained as a

result of the November 29, 2002 incident fails to establish that Plaintiff suffered from any

serious medical condition to which Defendants were deliberately indifferent.

Furthermore, insofar as Plaintiff maintains he sustained a back injury on November 29,

2002, which was not sufficiently treated, resulting in increased pain and disability, the

record is replete with evidence establishing that Plaintiff has long complained of back

pain relating to an earlier injury.  *See*, *e.g.*, AHR at 0031 (Plaintiff complaining on June

23, 1997 of pain from  "recent back injury"); AHR at 0045 (X-rays taken on May 20,

1995 showed straightening from muscle spasm, but no fracture).

The record also contains ample evidence establishing that Plaintiff has received

significant medical treatment at Elmira and Clinton for treatment of his low back and arm

pain, including after the November 29, 2002 incident.  Medical staff at Elmira and

Clinton repeatedly saw Plaintiff in connection with his complaints of low back pain, for

which Plaintiff was instructed to do back exercises, prescribed various muscle relaxant

medications, sent for various diagnostic tests, and referred for further evaluation.  *See*,

*e.g.*, Fuller Declaration ¶ 25 (instructing Plaintiff on at-home back exercises for

treatment of low back pain on April 3, 2003), ¶ 26 (referring Plaintiff to the Nurse

Practitioner for further examination on May 22, 2003), ¶ 28 (referring Plaintiff  for on-

going low back pain on June 5, 2003 to Nurse Practitioner Fowler who noted X-rays and

examination of Plaintiff's lumbar spine were normal, and referred Plaintiff to Dr. Canfield

for further evaluation), ¶ 29 (June 12, 2003 examination of Plaintiff by Dr. Canfield who

diagnosed soft tissue injury to Plaintiff's lumbar area for which EMG studies and

physical therapy were ordered); Dr. Lee Declaration ¶ 31 (commenting July 2003 EMG

of Plaintiff's right arm indicated mild right ulnar nerve compression across the elbow);  ¶

22 (examining Plaintiff on March 5, 2004 for chronic low back and elbow pain, for which

physical therapy was ordered and Flexeril prescribed), ¶ 24 (refilling Plaintiff's Flexeril

prescription), ¶ 25 (changing, on March 25, 2004, the dosage of Plaintiff's Flexeril

prescription), ¶ 26 (noting Plaintiff's Flexeril was refilled approximately every two

weeks).  There is also some evidence in the record that Plaintiff was noncompliant with

some of the medical treatment offered.  *See*, *e.g.*, Dr. Lee Declaration ¶¶ 27 (reporting

on July 21, 2004 Plaintiff refused to performed back exercises and only wanted Flexeril).

On October 8 and 22, 2004, Dr. Lee ordered a neurology consult and an MRI of Plaintiff's back.  Dr. Lee Declaration ¶ 33 (citing AHR 0256, 2396, 0397).  On November 3, 2004, DOCS denied both requests because of reservations about the severity of Plaintiff's alleged pain, and reasoning that the July 2003 EMG test was the proper functioning test, rather than an MRI and, as such, Dr. Lee ordered an EMG.  Dr. Lee Declaration ¶ 34 (citing AHR ¶ 0396).  Accordingly, on January 20, 2005, Plaintiff underwent an EMG of his right arm which "indicated the presence of persistent and moderately severe ulnar nerve entrapment across the right elbow," which, when compared to the July 2003 EMG, revealed Plaintiff's right elbow symptoms had worsened.  *Id.* ¶¶ 33,36-37 (citing AHR at 0251, 0256, 0396, 0397, 0577-0578).  Throughout the remained of his stay at Clinton, Plaintiff was prescribed home exercise, Flexeril and Tylenot. *Id.* ¶¶ 35, 38 (citing AHR at 0251-0255).

A thorough review of the record, the accuracy of which Plaintiff does not dispute, thus fails to establish any factual issue which, if decided in Plaintiff's favor, could establish the objective prong of Plaintiff's deliberate indifference claim with regard to injuries Plaintiff sustained during the November 29, 2002 incident.

Because Plaintiff has failed to establish the objective prong for his deliberate indifference claim as to the February 28, 2004, incident, the court need not address whether Plaintiff can establish the subjective prong as to either incident.  Nevertheless, because the matter is before the court for a Report and Recommendation, the court, in the interest of completeness, also addresses whether Plaintiff has met the subjective

15

component of his claim.

As to the subjective component, should the District Judge find that Plaintiff has sustained the objective component, *i.e.*, that Defendants did fail to provide adequate medical treatment for Plaintiff's injuries sustained during the November 29, 2002 incident, summary judgment as to this element of the claim should be GRANTED. Read liberally in Plaintiff's favor, the record reveals no evidence that any Defendant was aware that his or her failure to adequately treat Plaintiff would likely result in serious injury or pain to Plaintiff.  Significantly, Plaintiff has failed to provide or point to the existence of any such evidence.

Summary judgment as to Plaintiff's claim that Defendants acted with deliberate indifference to his serious medical needs should be GRANTED insofar as Plaintiff has failed to sustain the objective component of the claim; alternatively, summary judgment should also be GRANTED insofar as no genuine issues of material fact exist as to the subjective component of the claim.


**B.**      **Due Process**

Defendants seek summary judgment Plaintiff's claims that Esgrow denied Plaintiff due process in violation of the Fourteenth Amendment by denying Plaintiff's requests to (1) call two witnesses to testify at the rehearing; (2) present documentary evidence in his defense at the rehearing; and (3) listen to an audiotape of the first rehearing, arguing that Plaintiff was not constitutionally entitled to the requested rehearing assistance.  Defendants' Memorandum at 12-23.  Defendants alternatively argue that any error by Esgrow in conducting the rehearing was harmless and, as such,

cannot support a due process violation claim. *Id*. at 23-24.

Although inmates retain due process rights in prison disciplinary proceedings, *Hanrahan v. Doling*, 331 F.3d 93, 97 (2d Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1984)), the Supreme Court has held that due process protections are only required when the resulting disciplinary penalty "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

In the instant case, as a result of the rehearing Plaintiff's loss of 24 months of good time credit did not pose a sufficiently atypical and significant hardship on Plaintiff so as to warrant due process protection under *Sandin* particularly in light of the fact that, on January 21, 2004, Plaintiff's record was expunged of such disposition. *See Husbands v. McClellan*, 957 F.Supp. 403, 409 (W.D.N.Y. 1997) (loss of good time credits not an atypical or significant hardship where following expunction of guilty disposition, the plaintiff's good time credit was not restored, and there was not evidence that the temporary loss of such good time credit resulted in the plaintiff serving a longer overall sentence of incarceration).  Nevertheless, Plaintiff's confinement in SHU for 418 days, with concurrent loss of privileges, is considered a sufficiently atypical and significant hardship as to establish a protected liberty interest warranting due process protections.  *See Colon v. Howard*, 215 F.3d 227, 231-32 (2d Cir. 2000) ("Confinement in normal SHU conditions for 305 days is in our judgment a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin*.").  The court thus considers Plaintiff's assertions that Esgrow's failures to call Gilbert and Robinson as witnesses to testify on Plaintiff's behalf, to provide all

17

requested documentary evidence, and to review the audiotape of Plaintiff's initial hearing, constitute procedural due process violations.

"Prison disciplinary proceedings are not part of a criminal proceeding, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. In the context of a prison disciplinary hearing, due process requires that prison officials give an accused inmate written notice of the charges against him twenty-four hours prior to the hearing and a written statement of factual findings supporting the disposition and reasons for the disciplinary action taken." *Kalwasinski v. Morse*, 201 F.3d 103, 108 (2d Cir. 1999) (citing *Wolff*, 418 U.S. 563-64). Additionally, an inmate disciplinary hearing disposition "must be supported by at least 'some evidence.'" *Id*. (quoting *Superintendent v. Hill*, 472 U.S. 445, 455). Here, there is no evidence that Esgrow failed to meet these minimal requirements. Accordingly, due process did not require Esgrow to review the audiotape of Plaintiff's prior disciplinary hearing and, as such, summary judgment should be GRANTED as to that aspect of Plaintiff's Fourteenth Amendment due process claim.

As for Plaintiff's claims that he was denied the right to call witnesses and to present evidence, "[s]ubject to legitimate safety and correctional goals of the institution, an inmate should also be permitted to call witnesses and present documentary evidence." *Kalwasinski*, 201 F.3d at 108 (citing *Wolff*, 418 U.S. at 566). An inmate's right to call witnesses and to present evidence at a prison disciplinary hearing is, however, limited by the institution's interest in assuring that disciplinary proceedings are not so lengthy as to be unmanageable. *Baxter v. Palmigiano*, 425 U.S. 308, 321 (1976). According to the Supreme Court, a prisoner's right to call witnesses and to

18

present evidence at a disciplinary hearing can be restricted. *Wolff*, 418 U.S. at 566 ("Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile documentary evidence."). Finally, a prison official is not required to identify and locate a potential witness whom the inmate is unable to adequately identify. *Dixon v. Goord*, 224 F.Supp.2d 739, 746 (S.D.N.Y. 2002). Nevertheless, the Court has held that due process requires only that prison officials

> explain, in a limited manner, the reason why witnesses were not allowed to testify, but that they may do so either by making the explanation a part of the "administrative record" in the disciplinary proceeding, or by presenting testimony in court if the deprivation of a 'liberty' interest is challenged because of that claimed defect in the hearing. In other words, the prison officials may choose to explain their decision at the hearing, or they may choose to explain it "later."

*Ponte v. Real*, 471 U.S. 491, 497 (1985).

*See Russell v. Selsky*, 35 F.3d 55, 58 (2d Cir. 1994) ("*Ponte* hold only that some explanation must be provided either at the time of the disciplinary hearing or subsequently in court, and perhaps only *in camera* in the latter instance."). Additionally, an inmate disciplinary hearing disposition "must be supported by at least 'some evidence.'" *Id*. (quoting *Superintendent v. Hill*, 472 U.S. 445, 455). Relevantly, Plaintiff does not assert Esgrow's guilty findings were not supported by some evidence. Accordingly, due process did not require Esgrow to review the audiotape of Plaintiff's prior disciplinary hearing and, as such, summary judgment should be GRANTED as to that aspect of Plaintiff's Fourteenth Amendment due process claim.

With regard to Plaintiff's assertion that Esgrow denied Plaintiff's request to call

Gilbert and Robinson as witnesses on Plaintiff's behalf, Esgrow elicited from Plaintiff's Tier III assistant, Bradshaw, during the rehearing that Bradshaw, after being given only "sketchy descriptions" of such witnesses, was able to ascertain their identities through prison cell block log books, yet was unable to locate either Gilbert or Robinson, both of whom were released from DOCS custody prior to commencement of the rehearing.  T. at 5, 49, 58-60.  The record also establishes that on March 5, 2003, Esgrow, at Plaintiff's request, adjourned the rehearing for one week to give Plaintiff more time to locate Gilbert and Robinson.  T. at 49, 58-59.  When the rehearing resumed on March 12, 2003, Esgrow stated Bradshaw had reported that both Gilbert and Robinson had been released and were no longer within the custody or control of DOCS.  T. at 60. This statement is supported by a Witness Interview Notice form signed by Esgrow on March 12, 2003, indicating that Plaintiff's requests to call Gilbert and Robinson as witnesses were denied as both had been released from DOCS custody and care on February 21, 2003.  Esgrow Declaration Exh. C at Bates 0051.  Significantly, Plaintiff does not contend that either Gilbert or Robinson was available to testify or that a further adjournment would have permitted such witnesses to appear.  Accordingly, Esgrow adequately explained his reasons for failing to call Plaintiff's witnesses to testify at the rehearing.  *See Ponte*, 471 U.S. at 497 (prison officials may explain reasons for not calling specific witnesses either at disciplinary hearing or before court upon § 1983 review); *Baxter*, 425 U.S. at 321 (recognizing prison facility's need to keep disciplinary hearings to manageable length legitimate reason to deny calling witness).

Finally, insofar as Plaintiff maintains he was denied the right to present evidence, such claim is limited to a report allegedly prepared by one "Lt. W." which Esgrow

determined did not exist.  Esgrow Declaration ¶¶ 29-31.  According to Esgrow, no such

report was within the rehearing packet with which Esgrow was provided, and Bradshaw

was also unable to locate any such report.  *Id*.  Moreover, Esgrow stated on the record

that the "statement form Lt. W. doesn't exist."  T. at 2.  Such evidence sufficiently

establishes that Esgrow did not deny Plaintiff due process by refusing to permit Plaintiff

to present such evidence at the rehearing.  As Plaintiff has submitted nothing

controverting Esgrow's averrment, summary judgment on this aspect of Plaintiff's due

process claim should be GRANTED.

As such, Defendants' motion should be GRANTED as to Plaintiff's claims that he

was denied due process when Esgrow denied Plaintiff the right to call witnesses and to

present evidence.


### C.    Qualified Immunity

Alternatively, Defendants assert they are entitled to qualified immunity on

Plaintiffs' inadequate medical care and due process claims.  Defendants' Memorandum

at 23-24.  Plaintiff has not responded to this argument.  Because the matter is before

the court for Report and Recommendation, although the undersigned is recommending

granting summary judgment on Plaintiff's claims, whether Defendants are entitled to

summary judgment on these claims is addressed in the interest of completeness.

Qualified immunity shields law enforcement officials who perform discretionary

functions from liability if their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable prison official would have known.  *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 806 (1982); *Washington Square Post No. 1212 v. Maduro*,

907 F.2d 1288, 1291 (2d Cir. 1990). Even if the right at issue were clearly established, if it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity. *Saucier v. Katz*, 533 U.S.194, 201-02 (2001); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 568-69 (2d Cir. 1996); *Van Emrik v. Chemung County Dep't of Soc. Servs.*, 911 F.2d 863, 865-66 (2d Cir.1990); *Robison v. Via*, 821 F.2d 913, 920-21 (2d Cir. 1987). "The availability of the defense depends on whether a reasonable officer could have believed his action to be lawful, in light of clearly established law and the information he possessed." *Weyant v. Okst*, 101 F.3d 845, 858 (2d Cir.1996) (internal quotation marks omitted).

A right is clearly established if (1) it was defined with reasonable specificity, (2) its existence has been affirmed by either the Supreme Court or the relevant court of appeals, and (3) a reasonable defendant official would have understood under the existing law that his acts were unlawful. *Brown v. City of Oneonta, N.Y. Police Dep't*, 106 F.3d 1125, 1131 (2d Cir. 1997). In the instant case, Plaintiff's Eighth Amendment right to adequate medical care was defined with reasonable specificity by the Second Circuit as of February 28, 2004. *See Trammell v. Keane*, 338 F.3d 155, 162 (2d Cir. 2003) (observing different tests for evaluating Eighth Amendment claims for excessive force, conditions of confinement, and denial of medical care); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their present.").

Nevertheless, if it was objectively reasonable for a defendant to believe that his actions did not violate the plaintiff's constitutional rights, the defendant may be entitled to qualified immunity.  *Robison*, 821 F.2d at 920-21.  In particular, a defendant is entitled to summary judgment based on qualified immunity if the court finds that the asserted rights were not clearly established, or "if the defendant adduce[s] sufficient facts [such] that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not violate a federally protected right." *Robison*, 821 F.2d at 921 (internal quotation omitted).  Stated another way, a defendant is entitled to qualified immunity under the objectively reasonable standard if "officers of reasonable competence could disagree" on the legality of the defendant's actions.  *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995).

Where, however, the objective reasonableness of an officer's actions depends on disputed facts, summary judgment based on qualified immunity is properly denied. *Rivera v. United States*, 928 F.2d 592, 607 (2d Cir. 1991); *Brawer v. Carter*, 937 F.Supp. 1071, 1082 (S.D.N.Y. 1996).  Provided that no factual issues are disputed, the application of qualified immunity to the facts is a question of law for the court to decide. *Finnegan v. Fountain*, 915 F.2d 817, 821 (2d Cir. 1990).

In the instant case, based on the record and Plaintiff's failure to submit evidence establishing material issues of fact on Defendants' qualified immunity defense, summary judgment based on Defendants qualified immunity should therefore be GRANTED.

## **CONCLUSION**

Based on the foregoing, Defendants' motion (Doc. No. 36) should be GRANTED and the action should be dismissed as to Defendants Fuller, Esgrow, Bennett, Miller and Dr. Lee.  Alternatively, Defendants' motion should be GRANTED with regard to qualified immunity.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 2, 2009
            Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:       March 2, 2009
             Buffalo, New York